Decker *v.* State.

4119                                    126 S. W. 2d. 110

Opinion delivered March 13, 1939.

*Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for appellant.

*Jack Holt,* Attorney General, *Jno. P. Streepy,* Asst. Atty. General, for appellee.

Mehaffy, J. The appellant was convicted in the Jefferson circuit court of the crime of murder in the second degree and his punishment fixed at imprisonment in the state penitentiary for 21 years. The case is here on appeal.

Mrs. Mildred Seifert, a sister of Henry Jones, the man that was killed, testified that she operated a restaurant and also rented out rooms; her brother, Henry Jones and his wife occupied rooms there, as did the appellant, Earnest Decker; Decker was indebted to her in the sum of $15.05 which she had requested him to pay; on the night preceding the killing she saw Decker in front of her place and told him she needed the money; he said he did not have any money and did not know when he would have; later on that night about 11 or 11:30 the appellant came into witness' place and asked who had been in his room and taken his clothes; she told him it was probably her mother; that she told them to get the clothes and hold them for the rent, as Decker was going to move; they had some words about the clothes and debt and appellant told her she could keep the clothes, but nothing else, and he further said that if he had seen anyone coming out of the room with his clothes, that would be the last room they would ever come out of, and said there was going to be

trouble; they then had some words about how much of his clothes they would hold and finally appellant walked away; she heard someone knocking at Mrs. Jones' door the next morning and calling for Ollie; when she told him Ollie was out appellant told her that when she was dressed he wanted to see her a few minutes; later Mrs. Jones came upstairs with her sick baby, and when she found out that appellant had been there she sent for her husband, Henry Jones; her husband went to appellant's room at the request of witness, and was not at that time carrying anything; he came back later and got the suitcase containing appellant's clothes and carried them to appellant's room; the suitcase contained everything except appellant's overcoat and suit; the next thing she heard was someone calling Henry, and Mrs. Jones going down to the room; about this time she heard one shot fired; she ran out, met Mrs. Jones coming from the room crying, and went to the door and met appellant and another man and also a lady whom she did not know; witness asked Decker why he killed Henry and Decker said Jones tried to kill him; she called him a liar as Jones had left the room with nothing in his hand but the suitcase. Witness stated that her brother was 27 years old and weighed about 185 pounds; when she entered the room Jones was lying on the floor with his feet near the front door and his head near the door to the closet; she did not see a gun in the room and did not look for one; appellant never refused to pay his debt, but said he did not have the money; he did not always pay her when he had money; on one occasion stated to her that he would not give her his last two or three dollars and go around broke.

There were several other witnesses who testified, corroborating Mrs. Seifert.

The appellant testified that he lived at Pine Bluff in a rooming house, renting from Mrs. Seifert; he never had any dealings with any other person about renting the room; he was a painter and decorator by trade, but on August 7 was hired as a special police officer; he had known the deceased four or five years; he roomed with Mrs. Seifert and took his meals at her restaurant and at

one time owed her between $40 and $45. On August 7 he owed her about $10. On that date Henry Jones came into his room and asked if he had sent for him and told him Mildred said that he had; upon being told that witness had not asked for him, Jones left and returned in about five minutes bringing two suitcases that had been carried out of his room together with practically all of his clothes and some other objects; he talked to Mrs. Jones about these articles earlier in the morning; she asked him if he wanted the suitcases and he said he would get them later; witness stated that when Jones entered his room he asked what were all the things he was telling about his wife and witness denied it; Jones then cursed him and accused him of talking about Mrs. Seifert; witness told him that his (Jones) wife had always been a friend to him and he did not want to have any trouble; that Jones' wife was probably mad because the witness and Jones had been "honky-tonking" around and coming in late; witness then told Jones to leave the room, but instead of that Jones stepped to the dresser and grabbed a pistol, cursing him, and said he would kill witness with his own gun; witness then jumped up and grabbed Jones and in the scuffle he was trying to twist the gun out of Jones' hand, and when he practically had it out of Jones' hand, Jones jerked back, stepped into one of the suitcases, fell back, and the gun went off; that at the time the door to the room was shut, having been closed by Jones when he came in with the suitcases; that the first time Jones came, nothing out of the way was said, and when he came the second time witness did not know he was mad; he did smell the odor of whiskey on Jones' breath, and from what Jones said thought he must have been mad on the second trip, but witness said he could not have gotten away without being shot or injured; that Jones was between him and the door; this was his room; he had rented it, but not from Jones; that he had no dealings with Jones; Mrs. Jones, the mother of deceased, and also his wife, assaulted witness after the killing; he stated that Jones threatened to kill him.

On cross-examination he stated that he had done nothing to Mrs. Jones to cause Mr. Jones to get mad,

and Jones had no reason for killing him; that he did owe Mrs. Seifert some money and that she had ordered him to leave; that he called the sheriff on August 7 and asked if there was a way for him to get his clothes without paying the bill; he also called the prosecuting attorney and was told the best thing to do was to pay the bill; he had known Jones some time; Jones was about 27 years old, and the witness was 35; when in good health weighed about 150 and 160, but at the time of the shooting weighed only about 140; before the shooting he had done Jones no harm, was not mad at him when he brought the clothes in. Witness identified on a picture where he was standing when Jones came in and pointed out where the gun was lying on the dresser; that when Jones started toward him with the gun he ducked, grabbed it and grabbed Jones by the wrist. Witness was then handed the gun and told to turn it around and attempt to shoot himself as he said Jones was shot. He stated that he grabbed Jones and Jones stumbled over a suitcase and the gun went off; he denied that he told Mr. Voris that he caught Mr. Jones' wrist with one hand and the elbow with the other and twisted the gun up against him and fired.

It would serve no useful purpose to set out the testimony in detail. The only question argued by appellant is the court's refusal to give the following instruction requested by appellant:

"You are instructed that if you find from the evidence the defendant actually thought of the circumstances and appearances by which he was surrounded at the time of the killing; and that he honestly, and without fault or carelessness, believed he was in danger of losing his life or of receiving bodily harm at the hands of the deceased and that it was necessary to shoot the deceased in order to prevent such harm to himself, and that he fired the fatal shot for this purpose, the accused must be acquitted, although the jury may now believe from the evidence that the accused was mistaken in his conclusions as to the danger to himself and that in fact there was no danger threatening him, and no necessity for shooting the deceased; that the jury must judge the danger from the

standpoint of the defendant under all of the circumstances of the case as shown by the evidence, and not from the standpoint of the jury."

There are two reasons why it was not error for the court to refuse to give this instruction. The first is that there was no testimony tending to prove the facts set forth in the instruction. Appellant himself testified that Jones stepped back into a suitcase and fell back and the gun went off; that appellant and Jones were in a scuffle and he was trying to take the gun away from Jones.

The court gave of his own motion an instruction, based on the evidence, which is as follows:

"If you believe from the evidence in this case that the deceased attacked the defendant with a pistol and that the defendant, acting in good faith and without fault or carelessness on his part, honestly believed that he was in danger of losing his life or of receiving some great bodily harm at the hands of the deceased, and that he then grappled with the deceased and that in a struggle over the possession of the pistol it was discharged and the deceased thereby killed, then the defendant would be entitled to an acquittal."

The instructions given by the court correctly stated the law to the jury, and were as favorable to appellant as he had any right to ask.

The judgment is affirmed.